UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RAYMON K. NELSON, M.D.**　　　　　　　　　　**CIVIL ACTION**

**VERSUS**　　　　　　　　　　　　　　　　　　　**NO: 22-23**

**OCHSNER CLINIC FOUNDATION**　　　　　　　**SECTION: "S" (1)**

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)** (Rec. Doc. 10) by Kim Keene and Kim Ellender ("individual defendants") is **GRANTED**, and plaintiff's claims against them are **DISMISSED** with prejudice;

**IT IS FURTHER ORDERED** that the **Motion to Compel Arbitration and to Dismiss Under Federal Rule of Civil Procedure 12(b)(3)** (Rec. Doc. 11) by Ochsner Clinic Foundation ("Ochsner") is **GRANTED in part**, and this matter is **REFERRED** to arbitration and **STAYED** pending arbitration.

### BACKGROUND

Plaintiff, Dr. Ramon K. Nelson, was recruited for an Ochsner cardiologist position at St. Bernard Parish Hospital after he met Ochsner's System Chairman for Cardiovascular Disease Director, Dr. Christopher White, while attending a cardiology conference in New Orleans in March 2019. Plaintiff resigned from his practice in Washington, D.C. and relocated to New Orleans on or about May 1, 2019. On May 4, 2019, he signed a Physician Employment Agreement with Ochsner. The agreement contained the following provision:

　　16. <u>Arbitration</u>. Except as provided in Section 14.5(c) [relating to injunctive

relief for breaches of non-compete and non-solicitation covenants], any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement, or any amendment hereof, or the breach hereof shall be determined and settled in the parish of Jefferson, in accordance with the American Health Lawyers Association Alternative Dispute Resolution Services Rules of Procedure for Arbitration and applying the laws of the State of Louisiana.

Employment Agreement, Rec. Doc. 11-2.

      The agreement also provided that plaintiff's employment would commence on July 29, 2019. However, plaintiff did not actually begin working until on or about August 26, 2019, approximately one month later. Plaintiff argues that the unforeseen delay in his start date required him to borrow $15,000.00 from Ochsner for living expenses.[1]

      Ochsner terminated plaintiff's employment on April 1, 2020. Following his termination, he filed a complaint with the Equal Employment Opportunity Commission, and on January 5, 2022, filed the instant suit alleging discrimination based on race, color, and sex in violation of Title VII of the Civil Rights Act and Louisiana state law. He also alleges state law tort claims for negligent and intentional infliction of emotional distress.

      The individual defendants in this case, Ochsner employees Kim Keene and Kim Ellender, have filed a motion to dismiss under Rule 12(b)(6). Plaintiff has not opposed their motion. Ochsner has filed a motion to compel arbitration and to dismiss under Rule 12(b)(3), which plaintiff opposes.

## DISCUSSION

---

[1] While plaintiff argues that he relocated to New Orleans expecting to begin work in May, and thus his late August start date occasioned a four-month delay, the agreement specifies a July 29, 2019 start date.

I.  **Individual Defendants' Motion to Dismiss Under Rule 12(b)(6)**

The individual defendants in this case, Kim Keene and Kim Ellender, have moved for dismissal based on Rule 12(b)(6). The individual defendants contend that because a Title VII claim may be brought only against an employer, plaintiff's only claims potentially applicable to them are plaintiff's state law tort claims. The individual defendants further argue that plaintiff's state law claims against them are prescribed, and that they are barred by the Louisiana Workers' Compensation Act ("LWCA"), which provides the exclusive remedy for personal injuries caused by an employer's or coworker's negligence for injuries arising out of and in the course of employment. See Martin v. Am. Midstream Parters, LP, 386 F. Supp. 3d 733, 742-43 (E.D. La. 2019) (citing La. R.S. 223:1031, 1032) (other citations omitted). The complaint reflects that the injuries alleged against the individual defendants occurred during plaintiff's employment, which was terminated on April 17, 2020. Suit was filed on January 5, 2022, more than one year after the alleged conduct. Further, because plaintiff's complaint alleges that Ochsner is responsible under a theory of respondeat superior for harm committed by the individual defendants, the alleged conduct occurred during the course and scope of plaintiff's employment, and thus is redressable exclusively under the LWCA. Thus, the face of the complaint indicates that plaintiff's claims are prescribed and barred by the LWCA. Accordingly, the motion is granted.

II. **Ochsner's Motion to Compel Arbitration and to Dismiss Under Federal Rule of Civil Procedure 12(b)(3)**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., "embodies the national policy favoring arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440,(2006). The FAA

3

provides that an arbitration agreement is "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party to an arbitration agreement "may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." Id. at § 4. "Upon being satisfied that the issue involved in [a] suit or proceeding is referable to arbitration under such an agreement, [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." Id. at § 3.

### A. Agreement to Arbitrate the Dispute

The court applies a two-step analysis to determine whether a party may be compelled to arbitrate. Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir. 2008) (citation omitted). First, the court asks if the party has agreed to arbitrate the dispute. Id. If so, the court asks if "any federal statute or policy renders the claims nonarbitrable." Id. (quoting Wash. Mut. Fin Grp., LLC v. Bailey, 364 F.3d 260, 263 (5th Cir. 2004)). The first step, ascertaining if there is an agreement to arbitration, involves two questions. Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013). First, the court must determine if there is a valid agreement to arbitrate the claims. Id. Second, the court must decide if the dispute in question falls within the scope of that arbitration agreement. Id.

### 1. Valid Agreement to Arbitrate the Claims

"Because arbitration is simply a matter of contract between the parties, the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate." Id. (citations and quotations omitted). Rather, state-law contract

4

principles govern the inquiry of whether there is a valid agreement to arbitrate the claims. Id. (citation omitted).

Under Louisiana law, the formation of a valid contract requires: (1) capacity to contract; (2) mutual consent; (3) a certain object; and, (4) a lawful purpose. LA. CIV. CODE arts. 1918, 1927, 1966, and 1971. Plaintiff argues that he did not truly consent to the arbitration agreement because it is adhesionary.

An adhesionary contract "is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometime raise a question as to whether or not the weaker party actually consented to the terms." Aguillard v. Action Mgmt. Corp., 908 So.2d 1, 10 (La. 2005). To determine whether an arbitration clause is adhesionary the court considers: (1) "the physical characteristic of the arbitration clause"; (2) "the distinguishing features of the arbitration clause"; (3) "the mutuality of the arbitration clause"; and, (4) "the relative bargaining strength of the parties." Duhon v. Activelaf, LLC, ––– So.3d –––, 2016 WL 6123820, at *4 (La. 10/19/2016) (citing Aguillard, 908 So.2d at 16). "[T]he real issue in a contract of adhesion analysis is not the standard form of the contract, but rather whether a party truly consented to all the printed terms." Aguillard, 908 So.2d at 10. "[I]f [the standard form contract] does not call into question the non-drafting party's consent and if it is not demonstrated that the non-drafting party did not consent or his consent is vitiated by error, the contract is not a contract of adhesion." Id. at 11. The party seeking to invalidate the contract as adhesionary bears the burden of demonstrating that the non-drafting party did not consent to the terms or his consent was vitiated by error. Id. at

10.

Plaintiff has not demonstrated that the arbitration clause of the contract was adhesionary. As to the physical characteristics and distinguishing features, the arbitration clause is in the same size font as all of the other text and is contained in a separate numbered paragraph titled "16. Arbitration." It is not hidden in a large paragraph covering other topics or printed in a smaller font than the rest of the contract. The arbitration clause is mutual because it requires both parties to refer any dispute or controversy arising under, out of, in connection with, or in relation to the contract to arbitration.

Nelson acknowledges these facts, but argues that Ochsner's superior bargaining strength renders the contract adhesionary. He contends that because he resigned from his Washington, D.C. practice on or about May 1, and did not begin employment at St. Bernard Parish Hospital until late August, he was unexpectedly unemployed for four months and forced to borrow living expenses of $15,000 from Ochsner, making him vulnerable to over-reaching by Ochsner in contract negotiations.

However, the contract recites a July 26 start date, thus the unforeseen delay from the agreed upon start date to actual start date on August 26 was one month, and could not have affected plaintiff's decision to sign the contract on May 4. Further, Louisiana courts have rejected the contention that an employer automatically enjoys a superior bargaining position, indicating a "reluctan[ce] to find the requisite difference in bargaining positions between [an employee and employer] to justify labeling the present agreement a contract of adhesion" where the employee "could have found a similar position elsewhere [and] could have avoided the

arbitration agreement had she objected to it by simply choosing to work elsewhere." See, e.g., Stadtlander v. Ryan's Family Steakhouses, Inc., 794 So. 2d 881, 890 (La. App. 2nd Cir. 2001); see also, Welch v. A.G. Edwards & Sons, Inc., 677 So.2d 520 (La. App. 4th Cir. 5/15/96) ("[W]e conclude that the worker, who could have found a similar position elsewhere, could have avoided the arbitration agreement had she objected to it by simply choosing to work elsewhere.").

Plaintiff has failed to point to any evidence that he could not have found another position or returned to his private practice, and thus that he was forced to take the Ochsner position even though he did not approve of the arbitration provision. He also has not supplied any evidence that he objected to the arbitration provision or attempted to negotiate a different provision. The court thus finds that the arbitration clause is not adhesionary, and is valid and enforceable.

**2. Dispute Falls within the Scope of the Arbitration Agreement**

With respect to whether a dispute falls within the scope of an arbitration agreement, the court applies the strong federal policy in favor of arbitration and "any disputes concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 (1983). "[A]rbitration should not be denied unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." Safer v. Nelson Fin. Grp., Inc., 422 F.3d 289, 294 (5th Cir. 2005) (quotation omitted).

The United States Court of Appeals for the Fifth Circuit distinguishes between broad and narrow arbitration clauses:

> If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause. On the other hand, if the clause is narrow, the matter should not be referred to arbitration or the action stayed, unless the court determines that the dispute falls within the clause.

Complaint of Hornbeck Offshore (1984) Corp., 981 F.2d 752, 754 (5th Cir. 1993). "A broad arbitration agreement is capable of expansive reach, intended to cover all aspects of the relationship [such that] a dispute then need only touch matters covered by the agreement in order to compel arbitration." Grant v. Houser, 469 Fed. Appx. 310, 315-16 (5th Cir. 2012) (quotations omitted). An arbitration agreement stating that it applies to "any dispute" between the parties is broad. Id. at 316.

The arbitration agreement at issue herein is broad. By its terms it applies to "any dispute or controversy arising under, out of or in connection with, or in relation to [the Employment] Agreement, or any amendment [thereto]." Rec. Doc. 11-2, ¶ 16. Plaintiff's claims appear to arise from or in connection to the employment contract, and plaintiff has not offered any argument that they do not. Thus, they fall within the scope of the broad arbitration agreement.

**B. Federal Statute or Policy Rendering Claims Non-Arbitrable**

Finally, plaintiff has not pointed to any federal statute or policy that would render his claims non-arbitrable. The court will therefore refer this matter to arbitration and stay this matter pending arbitration. Accordingly,

**IT IS HEREBY ORDERED** that the **Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)** (Rec. Doc. 10) by Kim Keene and Kim Ellender ("individual defendants") is **GRANTED**, and plaintiff's claims against them are **DISMISSED** with prejudice;

**IT IS FURTHER ORDERED** that the **Motion to Compel Arbitration and to Dismiss Under Federal Rule of Civil Procedure 12(b)(3)** (Rec. Doc. 11) by Ochsner Clinic Foundation ("Ochsner") is **GRANTED in part**, and this matter is **REFERRED** to arbitration and **STAYED** pending arbitration.

New Orleans, Louisiana, this   29th   day of April, 2022.

                                        **MARY ANN VIAL LEMMON**
                                        **UNITED STATES DISTRICT JUDGE**